UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA       )
                               )
    v.                         )       Criminal No. 3:11-CR-72 JD
                               )       (related case Civil No. 3:12-CV-210 JD)
ZACHARY B. HUENERKOPF          )

## ORDER

Now before the Court is Zachary Huenerkopf's petition to vacate under 28 U.S.C. § 2255

[32] and his objections [DE 38] to the magistrate judge's report and recommendation [DE 37]

denying the petition.  The petition is fully briefed [DE 32, 35, 36].  The Court has also reviewed

the filings made with respect to the report and recommendation [DE 38, 40, 41].  For the reasons

that follow, the magistrate judge's report and recommendation is ADOPTED in part without

reaching the merits of the petition on account of the valid waiver and the petition is DENIED.

### I.  Background

In March 2011, Huenerkopf carried a .40 caliber handgun while distributing marijuana in

the South Bend area and he admittedly possessed the gun for protection during his drug

trafficking even though he was a convicted felon [DE 13 at ¶ 9(b)].  In late March, Huenerkopf

got into a dispute with Isaac Love about the quality of marijuana Huenerkopf sold to Love a few

days earlier. *Id*.  The dispute escalated into a violent encounter and Huenerkopf fired his .40

caliber handgun hitting Love in his hip and also accidentally hitting a bystander, Frank

Bowman,[1] in the stomach. *Id*.  Love was treated and released from the hospital on the same day,

but Bowman's injuries were classified by surgeons as life threatening and his condition was

critical [PSR at ¶¶ 13-14, 16-19].  Fortunately Bowman survived, but he continued to suffer

physical limitations from the incident. *Id*.

---

[1]Identified as Frank Hammond in the presentence report.

On June 8, 2011, a federal grand jury sitting in South Bend, Indiana indicted Huenerkopf for one count of knowingly and intentionally distributing marijuana in violation of 21 U.S.C. § 841(a)(1) (Count 1), one count of possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count 2), and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count 3) [DE 1]. On August 8, 2011, with the assistance of his retained attorney, Mr. Andre Gammage, Huenerkopf entered into a plea agreement [DE 13] with the government. Huenerkopf agreed to plead guilty to Counts 2 and 3 of the Indictment in exchange for the government's agreement to dismiss Count 1 (which it did) and to make a non-binding recommendation that he receive a 3 level reduction for acceptance of responsibility (which was granted) [DE 13 at ¶¶ 9(h), (f)]. Huenerkopf's plea agreement indicated he understood the maximum possible statutory penalties that could be imposed for each count, he understood that the Court would determine the guideline range to be applied at sentencing, and he agreed that other than what was contained in the plea agreement, no predictions, promises or representations had been made to him as to the specific sentence that would be imposed [DE 13 at ¶¶ 9(c), (e), (k)]. The plea agreement also contained the following waiver:

> (d) I understand that the offense to which I am pleading guilty falls under the Sentencing Guidelines promulgated by the United States Sentencing Commission under Title 28, United States Code, Section 994. I am aware that my sentence will be determined in accordance with the statutory maximums listed above, the United States Sentencing Guidelines, and this plea agreement. **I agree that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offense(s) as set forth in this plea agreement. With that understanding, I expressly waive my right to appeal my conviction, my sentence and any restitution order to any Court on any ground, including any claim of ineffective assistance of counsel. I also agree not to contest my conviction, my sentence, any restitution order imposed, or the manner in which my conviction, the sentence or the restitution order was determined or imposed on any ground including any alleged ineffective assistance of counsel in any appeal under Title 18, United States Code, Section 3742 or in any**

> **post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255**[.]

[DE 13 at ¶ 9(d) (emphasis added)]. Finally, in entering his plea agreement, Huenerkopf acknowledged that he believed his lawyer had "done all that anyone could do to counsel and assist [him]" and he offered his plea of guilty "freely and voluntarily and of [his] own accord" and he had not been "threatened in any way by anyone" to cause him to plead guilty [DE 13 at ¶¶ 11, 12].

During the change of plea hearing held on August 17, 2011 before the magistrate judge [DE 16], Huenerkopf was placed under oath and he swore to tell the truth. Huenerkopf confirmed that he was not threatened or forced to plead guilty, that no promises outside the plea agreement caused him to plead guilty, and that he had discussed with his attorney and understood the terms of his plea agreement. Huenerkopf indicated he was satisfied with Mr. Gammage's representation. Huenerkopf was advised of the nature of the charges and their possible penalties, and he was told the Court would ultimately determine the applicable advisory guidelines. The magistrate judge also specifically drew Huenerkopf's attention to the waiver provision located in paragraph 9(d) of his plea agreement and explained to Huenerkopf that if he was found guilty after a trial he would have the right to appeal with the assistance of counsel, but by pleading guilty he would not be able to appeal his conviction, sentence, or any restitution order. Huenerkopf affirmed that he understood what his waiver entailed. Thereafter, he was further advised that if he received a sentence more severe than he thought he would get or as advised by his attorney, he would not be able to withdraw his plea or be able to appeal—again, Huenerkopf indicated that he understood. The magistrate judge recommended that the undersigned accept the plea of guilty because Huenerkopf had knowingly and intelligently waived his constitutional rights, was informed of the possible penalties, and had freely and

voluntarily entered into the plea which was supported by an independent factual basis [DE 16, 17]. The undersigned then deferred acceptance or rejection of the plea and plea agreement until the time of sentencing and after the presentence investigation report was submitted and reviewed [DE 25]. At no time before the sentencing hearing—held over 3 months after the change of plea hearing and 2 weeks after the final presentence report issued—did Huenerkopf indicate any dissatisfaction with his attorney.

At sentencing, the Court accepted the plea of guilty, found Huenerkopf guilty of the offenses pled to, and accepted the plea agreement. Huenerkopf, after being placed under oath, confirmed that he received a copy of the final presentence report and that he had reviewed and discussed it with Mr. Gammage. The Court identified Huenerkopf's objection to paragraph 27 of the presentence report, which provided for a 2 level increase consistent with guideline § 2A2.2(b)(4) because the assault was motivated by a thing of value ($1,200.00 worth of marijuana). However, during the course of the sentencing hearing, Mr. Gammage withdrew the objection and indicated that the decision to withdraw it was made after further discussing the matter with Huenerkopf and having considered the value of the objection. As a result, the Court adopted the entirety of the uncontested presentence report. The presentence report indicated that the § 924(c) offense for possession of a firearm in furtherance of drug trafficking (Count 2) required a mandatory minimum 5 years of imprisonment consecutive to any other term of imprisonment imposed[2] [PSR ¶ 35], and calculated the guidelines for the § 922(g)(1) offense for being a felon in possession of a firearm (Count 3), as follows: Guideline § 2K2.1(a)(4)(A) set

---

[2]In reality, the government could have pursued the 10 year mandatory minimum, consistent with § 924(c)(1)(A)(iii), since the firearm was discharged; instead, only a 5 year sentence was imposed. In fact, Huenerkopf recognizes that the government could have pursued the more severe sentence, consistent with § 924(c)(1)(A)(iii), since the firearm was discharged, but it only sought the 5 year sentence under 924(c)(1)(A)(i) for possession of the firearm in furtherance of drug trafficking throughout March 2011, and then sought the specific offense characteristic increases under the guidelines for the firearm's discharge [DE 41 at 5-6].

the base offense level at 20 because Huenerkopf possessed the firearm after having 1 prior felony

crime of violence conviction for burglary of a dwelling. While no specific offense characteristics

outlined in § 2K2.2(b) applied, the cross-reference located in § 2K2.1(c) did apply because

Huenerkopf used and possessed the firearm in connection with another offense by shooting 2

men [PSR ¶¶ 7-15, 24]. Guideline § 2X1.1 was the appropriate starting point under the cross-

reference. But that guideline requires reference to other substantive guidelines, *see* 2X1.1(a),

and both parties agreed that Huenerkopf's shooting of the victims constituted an aggravated

assault, which is covered by guideline § 2A2.2. The base offense level under § 2A2.2 was 14,

and 3 specific offense characteristics applied consisting of a 5 level enhancement under

(b)(2)(A) for discharging the firearm,[3] a 5 level enhancement under (b)(3)(C) for causing a

victim to sustain permanent or life threatening bodily injury,[4] and a 2 level enhancement applied

under (b)(4) because the assault was motivated by a thing of value [PSR ¶¶ 23-27], which

resulted in an adjusted offense level of 26. After accounting for the 3 level reduction for

acceptance of responsibility [PSR ¶¶ 32-33], Huenerkopf's total adjusted offense level became

23 [PSR ¶ 34]. Combining his offense level of 23 with his criminal history category VI [PSR ¶¶

36-49], the guideline range for Count 3 was 92-115 months of imprisonment [PSR ¶ 72].

Huenerkopf was sentenced to 60 months on Count 2 consecutive to 103 months on Count 3, for a

total term of 163 months imprisonment, followed by 3 years of supervised release [DE 27].

Prior to completing the sentencing hearing, the Court referred Huenerkopf to paragraph

9(d) of his plea agreement. Upon being asked whether he understood that pursuant to paragraph

---

[3]As will soon become clear, this enhancement is one of the subjects of Huenerkopf's § 2255 petition. He also challenges the propriety of the 924(c) count, but then withdrew this argument. *See infra*, note 6. However, to get to the merits of the issues he raises, he must be able to overcome his waiver.

[4]A 7 level enhancement under (b)(3)(C) would have applied but for the 10 level cap for adjustments under guideline § 2A2.2(b)(2) and (3). In reality, the enhancement for the firearm's discharge resulted in a 3 level increase.

9(d) of his plea agreement, he waived his right to appeal or contest his conviction and sentence,

or the manner in which his conviction and sentence were determined or imposed to any court on

any ground, Huenerkopf responded in the affirmative.

Huenerkopf did not file a direct appeal, but he has now petitioned this Court to vacate his

sentence under 28 U.S.C. § 2255 [DE 32]. In support of his petition, Huenerkopf has filed

various briefs, including a memorandum and reply brief in support of his § 2255 petition [DE 32,

36, 37], as well as an objection and reply brief [DE 38, 41] to the magistrate judge's report and

recommendation denying the petition. After careful review, the Court liberally construes

Huenerkopf's *pro se* submissions to allege that he did not knowingly and intelligently enter into

his plea agreement or its waiver provision because Mr. Gammage provided ineffective assistance

at the sentencing stage by advising Huenerkopf to plead "guilty to an illegal sentence." [DE 36 at

3]. In effect, Huenerkopf's argument is that because Mr. Gammage did not object to the

presentence investigation report which contained an improper calculation of the guidelines, his

sentence was illegal,[5] and thus, his attorney's ineffectiveness negates his waiver provision.

Huenerkopf makes no other argument[6] and the following excepts from his filings make this

evident:

- "Because Petitioner anticipates the Government relying on the [waiver provision] incorporated within the plea of guilty, Petitioner will foreclose that claim by showing that the plea of guilty is [in]valid because the plea was not made

---

[5]Throughout this opinion, the Court refers to Huenerkopf's sentence as being "illegal" because that is the characterization repeatedly provided by Huenerkopf even though his sentence did not exceed the statutory maximum terms of imprisonment.

[6]Huenerkopf withdrew any argument that Mr. Gammage should have objected to the imposition of the § 924(c) sentence because the underlying felony drug offense was ultimately dismissed [DE 38 at 2, 4]. The law of the circuit makes clear that such a claim is without merit. *See Young v. United States*, 124 F.3d 794, 800 (7th Cir. 1997) ("Section 924(c) is similar in concept, requiring proof of a predicate offense without requiring the conviction for that offense."); *see also* 18 U.S.C. § 924(c)(1)(A) ("any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person *may be prosecuted* in a court of the United States) (emphasis added).

knowingly and intelligently, as a result of ineffective assistance of counsel, wherein Counselor Gammage plead (sic) Petitioner guilty to an illegal sentence as will be fully explained below." [DE 32-1 at 4, Memo. in Support of § 2255].

• "Counselor Gammage assisted Petitioner into pleading guilty to an illegal sentence, thus making the plea negotiation void from its inception." [DE 32-1 at 8, Memo. in Support of § 2255].

• "[T]he fact that the sentence is illegal and contrary to Application note 2 for § 2K2.4, demonstrates the ineffectiveness of Petitioner's counsel, thus, overcoming the waiver provision incorporated with the plea agreement." [DE 32-1 at 14, Memo. in Support of § 2255].

• "[I]t is Petitioner's position that the term of imprisonment for which he is sentenced is void because the plea of guilty that he entered into with the Government is tainted with ineffectiveness of trial counsel, thus, making the agreement null and void from its inception." [DE 32-1 at 21, Memo. in Support of § 2255].

• "[T]he plea colloquy is of no significance . . . due to the ineffectiveness of counsel complained of herein is the result of attorney Gammage counseling Petitioner into agreeing to the illegal sentence, prior to the plea colloquy." [DE 36 at 1, Reply to § 2255].

• "[T]his Court must not be mislead (sic) to believe Petitioner would have known his sentence was illegal prior to the plea colloquy . . . the 'impermissibly double counting' claim was not brought to Petitioner's attention until he arrived at the FCI Manchester, wherein a jailhouse lawyer assisted him in preparing his § 2255 motion." [DE 36 at 2, Reply to § 2255].

• "Petitioner was lead (sic) to enter into a plea agreement with the Government wherein a specific base offense characteristic was applied to the already enhanced underlying offense by way of the § 924(c)(1) conviction . . . Petitioner [was counseled] into pleading guilty to an illegal sentence. Thus, any waiver relied upon by the Government to deny the requested relief should not have any bearing on Petitioner's claim because the waiver is tainted with ineffective assistance of counsel." [DE 36 at 6-7, Reply to § 2255].

Although Huenerkopf offered the baseless legal conclusions that his waiver was not knowingly and voluntarily made and, subsequently, that his attorney was ineffective in negotiating the waiver, he provided no facts to support his assertion. Moreover, he has never claimed that he misunderstood the impact of the waiver nor cite any facts to explain how counsel

7

was ineffective in negotiating the waiver. In response to the § 2255 petition, the government

explained that Huenerkopf's claims were insufficient to negate his waiver because "the

defendant's 2255 motion does not supply adequate factual allegations, support, or evidence for

his claim that counsel was insufficient *specifically with regards to the negotiation of the waiver*,

as required by the Seventh Circuit." [DE 35 at 5, Gov't Response to § 2255] (emphasis in

original) (citing *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999)).

In issuing the report and recommendation, with respect to the waiver the magistrate judge

determined that:

> While 28 U.S.C. §2255 allows a criminal defendant to collaterally attack his
> judgment and sentence, he may also waive his right to bring a §2255 motion.
> "[W]aivers are enforceable as a general rule; the right to mount a collateral attack
> pursuant to § 2255 survives only with respect to those discrete claims which
> relate directly to the negotiation of the waiver." *Jones v. United States*, 167 F.3d
> 1142, 1145 (7th Cir. 1999). In order to prevail when a waiver is present, the
> petitioner must establish that the waiver was not knowingly or voluntarily made,
> or demonstrate ineffective assistance of counsel with respect to the negotiation of
> the waiver. *Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000).

[DE 37 at 3-4]. The magistrate judge held that Huenerkopf's change of plea hearing and plea

agreement demonstrated that his guilty plea was knowingly and intelligently entered and he had

waived any claims of ineffective assistance of counsel [DE 37 at 4-7]. The report and

recommendation indicated there simply was no factual support for Huenerkopf's conclusory

allegations that his guilty plea was not knowingly and intelligently made.

Huenerkopf filed an objection to the report and recommendation [DE 38]. Although

Huenerkopf correctly notes that a claim of ineffective assistance of counsel in connection with a

waiver's negotiation cannot be barred by the agreement itself [DE 38 at 3], *see Jones v. United*

*States*, 167 F.3d 1142, 1145 (7th Cir. 1999), he then reiterated that the "gist of [his] claim was

that his counsel allowed the Government to impermissibly double count in fashioning his term of

imprisonment when drafting the plea agreement." *Id.* at 4. Huenerkopf argues Mr. Gammage

ineffectively advised him to enter into a plea agreement resulting in his receiving an increased

sentence because Mr. Gammage failed "to understand the Sentencing Guidelines and there (sic)

application to this instant offense." [DE 38 at 6-7].

The Government again responded to Huenerkopf's allegations. In relevant part, the

government argued:

> The problem for the defendant is that he does not point to anything that attorney
> Gammage did or failed to do at the time the plea agreement (containing the
> appeal/2255 waiver) was negotiated and signed, nor does he point to any alleged
> ineffective assistance of counsel at the time of the Rule 11 plea hearing was
> conducted, when the appeal/2255 was reviewed and acknowledged before the
> Court under oath. Rather, the only alleged ineffective assistance of counsel that
> the defendant alleges, including in his latest Objections to the Report and
> Recommendations, is that defense counsel Gammage failed to object to a
> sentencing enhancement recommended by the Probation Officer in the
> Presentence Investigation Report and imposed by the Court . . .
>
> As such, the ineffective assistance of counsel of which the defendant complains
> had nothing to do with the negotiation or terms of his plea agreement . . .
>
> Plainly, the alleged ineffective assistance of Mr. Gammage . . . had nothing to do
> with the negotiation of the appeal/2255 waiver in the written plea agreement. As
> such, that waiver stands, it is enforceable, and the defendant's objections to the
> Magistrate Judge's Report and Recommendation should be overruled.

[DE 40 at 5-6, Gov. Response to Objection to Report and Recommendation].

Huenerkopf filed a reply to the government's response [DE 41]. Once again, Huenerkopf

repeated his sole allegation that Mr. Gammage was ineffective because Mr. Gammage should

have known based on the facts of the case that Huenerkopf's sentence might be increased with

the specific offense characteristics listed in the applicable guideline provision [DE 41 at 3-5,

Reply to Objection to Report and Recommendation]. Huenerkopf makes clear that it is **"[his]**

**contention that his counsel denied him effective assistance of counsel by allowing the**

**Government to employ each specific offense characteristic . . . and impose a term of**

**imprisonment under the § 924(c)(1) offense**." [DE 41 at 5] (emphasis added). Huenerkopf

asserts the Court should find the waiver provision "void" and resentence him because Mr.

Gammage never discussed these sentencing issues with him [DE 41 at 6, 8].

## II. Legal Standard

### Review of Report and Recommendation

The district court has discretion to accept, reject, modify, in whole or in part, the findings

or recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1). Under Federal Rule of Civil

Procedure 72(b)(3), the district court must undertake a *de novo* review "only of those portions of

the magistrate judge's disposition to which specific written objection is made." *Johnson v. Zema*

*Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir.

1995). If no objection or only a partial objection is made, the court reviews those unobjected

portions for clear error. *Johnson*, 170 F.3d at 739. Under the clear error standard, the court can

only overturn a magistrate judge's ruling if the court is left with "the definite and firm conviction

that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th

Cir. 1997).

The Court conducts a *de novo* review of the entire report and recommendation given

Huenerkopf's claim that the magistrate judge's conclusions were erroneous.

### Relief under 28 U.S.C. § 2255

Section 2255(a) of Title 28 provides that a federal prisoner may claim "the right to be

released upon the ground that the sentence was imposed in violation of the Constitution or laws

of the United States, or that the court was without jurisdiction to impose such sentence, or that

the sentence was in excess of the maximum authorized by law, or is otherwise subject to

collateral attack, [and] may move the court which imposed the sentence to vacate, set aside or

correct the sentence." 28 U.S.C. § 2255(a).  The Seventh Circuit has recognized that § 2255

relief is appropriate only for "an error of law that is jurisdictional, constitutional, or constitutes a

fundamental defect which inherently results in a complete miscarriage of justice." *Harris v.*

*United States,* 366 F.3d 593, 594 (7th Cir. 2004) (citation omitted).  Further, "a Section 2255

motion is neither a recapitulation of nor a substitute for a direct appeal." *Olmstead v. United*

*States*, 55 F.3d 316, 319 (7th Cir. 1995) (citation omitted).  Relief under § 2255 is extraordinary

because it seeks to reopen the criminal process to a person who has already had an opportunity

of full process. *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v.*

*United States,* 467 F.3d 1063, 1068 (7th Cir. 2006)).  Consequently, "[i]f it plainly appears from

the motion, any attached exhibits, and the record of prior proceedings that the moving party is

not entitled to relief, the judge must dismiss the motion." Rule 4, Rules Governing Section 2255

Proceedings for the United States District Courts.  A court may also deny a § 2255 motion

without an evidentiary hearing if "the motion and the files and records of the case conclusively

show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

### III.  Discussion

**§ 2255 Petition and Waiver**

Before considering the merits of Huenerkopf's § 2255 petition, the Court must first

determine whether Huenerkopf's waiver is enforceable.

To bar collateral review, the plea agreement must clearly state that the defendant waives

his right to collaterally attack his conviction or sentence in addition to waiving his right to a

direct appeal.  *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011) (citing *United States v.*

*Monroe*, 580 F.3d 552, 556 (7th Cir. 2009)).  Huenerkopf's does. The relevant paragraph in the

plea agreement broadly states that Huenerkopf "expressly waive[s] [his] right to appeal [his]

conviction, [his] sentence and any restitution order to any Court on any ground, including any

claim of ineffective assistance of counsel . . . [and he agrees] not to contest [his] conviction, [his]

sentence, any restitution order imposed, or the manner in which [his] conviction, the sentence or

the restitution order was determined or imposed on any ground including any alleged ineffective

assistance of counsel in any appeal under Title 18, United States Code, Section 3742 or in any

post-conviction proceeding, including but not limited to, a proceeding under Title 28, United

States Code, Section 2255[.]"  Thus, the waiver was clear and unambiguous.

Moreover, a defendant may certainly waive the right to appeal his conviction and

sentence, as well as the ability to challenge either in a collateral attack. *Dowell v. United States*,

694 F.3d 898, 901 (7th Cir. 2012) (citing *United States v. Alcala*, 678 F.3d 574, 577 (7th Cir.

2012); *Keller*, 657 F.3d at 681).  The Seventh Circuit has repeatedly held "that a voluntary and

knowing waiver of an appeal is valid and must be enforced." *Id*. at 902 (citing *United States v.

Sakellarion*, 649 F.3d 634, 638 (7th Cir. 2011)). There are only limited instances when the court

will not enforce a knowing and voluntary waiver of direct appeal or collateral review, including

when the sentence exceeds the statutory maximum, when the plea or court relies on a

constitutionally impermissible factor like race, or when counsel is ineffective in the negotiation

of the plea agreement. *Id.* (citing *Keller*, 657 F.3d at 681).  Liberally construed, Huenerkopf

argues his waiver should not be enforced because his counsel was ineffective at sentencing, and

that therefore he could not have entered into his plea knowingly and voluntarily.

This Court's review of the plea colloquy confirms that Huenerkopf did in fact knowingly

and voluntarily waive his right to contest his sentence on appeal or in post conviction

proceedings.  The magistrate judge went over the plea agreement in detail and confirmed that

Huenerkopf entered into the agreement freely and voluntarily. Two times, the court told

12

Huenerkopf that by pleading guilty he would not be able to contest his conviction and sentence, even if he received a sentence more severe than he thought he would get or as advised by his attorney. Each time, Huenerkopf confirmed that he understood what the waiver entailed.[7] Further, as required under Federal Rule of Criminal Procedure 11, the magistrate judge, before Huenerkopf's plea was accepted by the undersigned, ensured that Huenerkopf understood the nature of the charges against him, the maximum penalties possible under those charges, and the applicability and possible variations of the sentencing guidelines. *See* Fed. R. Crim. P. 11(b)(1). The court also ensured his understanding of his right to persist in a not guilty plea, his right to a jury trial, his right to have his attorney call and cross examine witnesses and subpoena documents and the appearance of witnesses, and his right to testify or not to testify. *Id*. Additionally, the court inquired into the factual basis for the charges supporting the plea. *Id*. Finally, the court made certain that Huenerkopf's plea was voluntary and not the result of force, threats or promises. *See* Fed. R. Crim. P. 11(b)(2). The court made certain that Huenerkopf understood that he was waiving these trial rights and his right to appeal his conviction and sentence. *Torzala v. United States*, 545 F.3d 517, 522 (7th Cir. 2008) ("A plea agreement is constitutionally valid if it 'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant,' and we look to all of the relevant circumstances surrounding the plea when determining whether this standard has been met.") (internal citations and quotation omitted). Given all this, the record belies any lack of voluntariness or knowledge related to Huenerkopf's entering into the plea agreement containing the waiver provision.

Relative to Huenerkopf's claim that his trial counsel was ineffective in the negotiation of the waiver—Huenerkopf makes this allegation with no facts to support it despite several

---

[7]At sentencing, Huenerkopf confirmed for a third time that he understood the contents of his waiver.

advisements that he must present facts indicating counsel's ineffectiveness relative to the

negotiation of the plea.  When specifically questioned by the magistrate judge during the change

of plea hearing, Huenerkopf stated that he was pleased with the performance of his attorney up to

that time.  And now, Huenerkopf raises facts which may (or may not) support a claim for

ineffectiveness at the sentencing phase, long after Huenerkopf knowingly and voluntarily stated

his intention to plead guilty and entered into the plea agreement waiving his right to appeal.  The

record makes clear that Huenerkopf only challenges the fact that his attorney did not make

adequate objections to the specific offense conduct for which he was held accountable at

sentencing.  Thus, Huenerkopf's ineffective assistance of counsel claim relates only to his

attorney's performance with respect to sentencing. *Mason v. United States,* 211 F.3d 1065, 1069

(7th Cir. 2000).  And because the challenge has nothing to do with the issue of a deficient

negotiation of the waiver, Huenerkopf has waived his right to seek post-conviction relief. *Id*.

(citing *Jones*, 167 F.3d at 1145). Thus, denial of his § 2255 petition is proper.

   As to any allegation that Mr. Gammage provided ineffective assistance rendering

Huenerkopf ignorant of the consequences of the plea, Huenerkopf has presented no evidence that

his trial counsel's conduct fell below objectively reasonable standards of effective representation

nor that this alleged ineffectiveness prejudiced Huenerkopf. *See Strickland v. Washington*, 466

U.S. 668, 687-94 (1984).  Moreover, Huenerkopf does not allege that but for counsel's deficient

performance he would not have pled guilty[8]—rather he simply wants to be re-sentenced.[9]

---

   [8]Because Huenerkopf's guilty plea and agreement were not accepted until his sentencing hearing,
Huenerkopf could have withdrawn his guilty plea at any time before this Court formally accepted it, for any reason
or for no reason at all. Fed. R. Crim. P. 11(d); *United States v. Jones*, 381 F.3d 615, 618 (7th Cir. 2004) (if the
district court has not yet accepted a deferred plea, the plea can be freely withdrawn without any explanation); *United
States v. Merriweather*, 294 F.3d 930 (7th Cir. 2002) (where a district court has not yet accepted a deferred plea,
defendant may withdraw it freely and without inquiry).  In the roughly 3 months that passed between Huenerkopf's
plea colloquy with the magistrate judge and the actual acceptance of his guilty plea at the sentencing hearing,
Huenerkopf received a great deal of information about his likely sentencing range. Among other things, he received

In short, Huenerkopf's challenge to his lawyer's handling of the sentencing process and the failure to object to the application of specific offense characteristic enhancements has nothing to do with the negotiation of his plea agreement or its waiver. Thus, Huenerkopf's waiver must be enforced and his collateral attack dismissed.

**Certificate of Appealability**

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant" and the Rule permits the Court to hear further argument on whether a certificate of appealability should issue. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c); Rule 11, Rules Governing Section 2255 Proceedings for the United States District Courts. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different

---

a draft presentence investigation report [DE 19], to which defense counsel objected [DE 21], and a final presentence investigation report [DE 22]. The final presentence investigation report – which Huenerkopf confirmed, on the record, that he personally read and reviewed with his attorney – explicitly informed Huenerkopf that he was facing a guideline sentencing range of 92-115 months of imprisonment on Count 3 [PSR ¶ 72] and a consecutive sentence of 60 months on Count 2. *Id.*

[9] If the Court were to agree with Huenerkopf that he did not knowingly and intelligently enter into his plea or that his counsel rendered ineffective assistance in negotiating the plea thereby negating the plea agreement's waiver, the proper remedy would be to withdraw the plea in its entirety and allow the case to proceed to trial on all counts or to be disposed of by way of a plea of guilty without the benefit of a plea agreement or, should the government offer one, Huenerkopf could enter into a new plea agreement. *See e.g. United States v. Nelson,* 124 F.3d 206 (7th Cir. 1997) (table) ("Our examination of the plea colloquy indicates that Nelson knowingly and voluntarily waived his right to appeal. Moreover, if his plea (or agreement to these terms) was made under improper conditions, his remedy would be the withdrawal of his plea (not this court's examination of his sentence.") (citing *United States v. Walker*, 98 F.3d 944, 946 (7th Cir. 1996)); *see also United States v. Sakellarion*, 649 F.3d 634, 639 (7th Cir. 2011) ("We have long held that an appellate waiver 'stands or falls with the rest of the bargain.'"); *United States v. Hare,* 269 F.3d 859, 862-63 (7th Cir. 2001) ("If the defendant does not keep his promises, the prosecutor is not bound either . . . [a] defendant who promises as part of his plea agreement to provide truthful information or testify in some other case, and who does not carry through, forfeits the benefits of the agreement, and the United States is free to reinstate dismissed charges and continue the prosecution. So, too, with a defendant who promises not to appeal and then puts the prosecutor through the appellate process anyway. This remedy assists other defendants by enabling them to make believable promises not to appeal.") (internal citations omitted). Yet, Huenerkopf does not indicate he wishes to withdraw from the plea agreement.

manner or that the issues presented were adequate to deserve encouragement to proceed further."

*Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (quotation marks omitted) (quoting *Barefoot v.*

*Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see Young v. United States*, 523 F.3d 717 (7th Cir.

2008). A defendant is not required to show that he will ultimately succeed on appeal. *Miller-El*

*v. Cockrell,* 537 U.S. 322, 342 (2003) (stating that the question is the "debatability of the

underlying constitutional claim, not the resolution of that debate").

Additional argument is not necessary here because nothing before the Court suggests that

jurists of reason could debate the correctness of the Court's rulings herein, nor could there be a

debate about whether the issues presented deserve further proceedings. As a result, the Court

declines to issue the Defendant a certificate of appealability.

The Court advises Huenerkopf that pursuant to Fed. R. App. P. 22(b), when the district

judge denies a certificate of appealability, the applicant may request a circuit judge to issue the

certificate. The Court further advises Huenerkopf that Fed. R. App. P. 4(a) governs the time to

appeal an order entered under the rules governing § 2255 proceedings. *See* Rule 11(b), Rules

Governing Section 2255 Proceedings for the United States District Courts. Under Fed. R. App.

R. 4(a), when the United States is a party in a civil case, any notice of appeal may be filed by any

party within 60 days after the judgment or order appealed from is entered. Fed. R. App. P. 4(a);

*Guyton v. United States*, 453 F.3d 425, 427 (7th Cir. 2006) ("the time to contest the erroneous

denial of [the defendant's] first § 2255 motion was within 60 days of the decision.").

## IV. Conclusion

The Court ADOPTS the magistrate judge's report and recommendation to the extent it

concludes that Zachary Huenerkopf's petition pursuant to 28 U.S.C. § 2255 should be

DENIED—however, the Court does so by finding that the waiver is enforceable for the reasons

16

set forth herein and without reaching the merits of the petition.  Accordingly, the Court DENIES

Huenerkopf's § 2255 petition and DENIES the issuance of a certificate of appealability.

SO ORDERED.

ENTERED:  May 22, 2013

                                        /s/ JON E. DEGUILIO
                                 Judge
                                 United States District Court